UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JACQUELINE BRITT,

                     Plaintiff,

            - against –

MERRILL LYNCH & CO., INC. and RICHARD JOYCE,

                     Defendants.

'08 CIV 5356

08 CV

COMPLAINT

JURY TRIAL DEMANDED

    Plaintiff Jacqueline Britt, by her undersigned attorneys, for her Complaint avers as follows on personal knowledge as to herself and on information and belief as to all other matters:

## NATURE OF THE ACTION

    1.    This litigation arises from unlawful discriminatory practices, sexual harassment, and retaliation against plaintiff Jacqueline Britt ("Britt") by defendants Merrill Lynch & Co., Inc. ("Merrill") and Richard Joyce ("Joyce") (collectively, the "Merrill Defendants"), as well as various other executives and senior executives associated with the Merrill Defendants.

    2.    Britt seeks compensatory and punitive damages arising from these unlawful practices and harassment.

## JURISDICTION AND VENUE

    3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that Plaintiff is a citizen of New Jersey, Defendants are citizens of New York and/or Delaware, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

    4.    Venue is proper in this district pursuant to 28 U.S.C. 1391(a), in that all defendants reside in this district; in addition, a substantial part of the events giving rise to the claim occurred in this district, in particular, at Merrill's headquarters at the World Financial Center in New York City.

## PARTIES

5.      Defendant Merrill Lynch is a Delaware corporation with its global headquarters and principal place of business at 4 World Financial Center, 250 Vesey Street, New York, New York 10080.

6.      Defendant Joyce is a natural person who resides in Westchester County, New York, and is and, at all pertinent times, was an employee of Merrill at Merrill's global headquarters in New York City.

7.      Plaintiff Britt is a natural person who resides at 10 Rodman Lane, Westfield, New Jersey.  From June 2004 through February, 2008, Britt was employed by Merrill at its global headquarters in New York City.

## AVERMENTS FORMING THE BASIS OF PLAINTIFF'S CLAIMS

8.      The facts of this case are reminiscent of horror stories about Wall Street "boiler room" trading operations of the 1950s, replete with scandalous sexually harassing conduct, discrimination on the basis of gender, and a pervasive, misogynistic "old boys club" system of compensation. Unfortunately, the facts concern present-day workplace conditions for women at Merrill, one of the largest financial institutions in the world, and an institution that purports, falsely, to embrace policies of "diversity and inclusion" regarding its employees.[1]

9.      Britt was employed by Merrill as a trader of shares of publicly-traded corporations (hereafter, an "equities sales trader") in its New York City headquarters from June 2004 until February 28, 2008.  During that time she was subjected to demeaning, offensive, hurtful sexual insults, innuendo and harassment at the hands principally of defendant Joyce, but fully known to and tolerated by Merrill.  Britt was discriminated against on account of her

---

[1] http://www.ml.com.

gender and because, while employed at Merrill, she took a four-month maternity leave. As a result of this discrimination, Britt was not only harassed but, in each succeeding year of her employment, was paid less than the previous year, all as part and parcel of Merrill's pervasive pattern of gender discrimination and tolerance of sexual harassment.

10.    Britt is and, during the relevant time period covered by the within complaint, was a successful and highly regarded equities sales trader. Prior to her employment at Merrill, Britt was an equities sales trader at Morgan Stanley and Bank of America.

11.    In the Spring of 2004, Britt was actively recruited by Merrill to join its equities trading group for the purpose of increasing Merrill's exposure and business with large revenue buy-side accounts. Britt became known to Merrill because of her success while at Morgan Stanley and Bank of America with large revenue accounts, and had become well-known and considered a valuable asset on Wall Street.

12.    In order to induce Britt to join Merrill, Merrill agreed to a contract which guaranteed Britt compensation of $1,500,000.00 for the year 2004 and $1,200,000.00 for the year 2005. Britt fully performed all of the terms and conditions of the contract.

13.    Unbeknownst to Britt, there existed fierce resentment among the male members of the equities trading group about the level of her compensation, including among senior management of Merrill with oversight over that group. This resentment exacerbated when Britt took maternity leave from June 2005 until October 2005.

14.    The Merrill Defendants undertook what became a pattern of unlawful sexual harassment of Britt with a view to making her workplace environment and compensation arrangements so intolerable as compared to her male counterparts that she would be forced out of

the company. The Merrill Defendants ultimately succeeded in its goal when Britt resigned on February 28, 2008.

15.    The pattern of sexual harassment of Britt began in earnest in November 2005, when Merrill reassigned the seating arrangements of traders in its equities trading group. Britt was for the first time seated immediately adjacent to the workspace of defendant Joyce.

16.    Upon information and belief, Joyce was well-known within and by Merrill to have engaged over many years in conduct constituting unlawful sexual harassment in the workplace. Despite incidents of inappropriate behavior at Merrill, as of 2005 Joyce retained (and, on information and belief, to date retains) the title of Managing Director.  In such role Joyce was superior to Britt in the corporate hierarchy and had authority over Britt and other traders assigned to the equities trading group.

17.    Joyce baited, insulted, demeaned and otherwise acted inappropriately and unlawfully towards Britt from November 2005 until her resignation. Among the numerous instances of inappropriate remarks were, without limitation, the following:

    a.    Joyce stated to Britt that his daughter was "getting her beaver [i.e., pubic hair] shaved";

    b.    Joyce asked Britt: "Do you have dandruff on your fur [pubic hair]";

    c.    Joyce routinely described in graphic detail sex acts allegedly engaged in by his colleagues, and loudly inquired of males in his vicinity whether they had recently "given any wood" to their partners;

    d.    Joyce described in the obvious presence of  Britt his own sexual activities with his wife;

e.  Joyce routinely loudly inquired if women passing by his desk were wearing thongs, panties or briefs;

f.  Joyce told Britt that she was not being assigned to Merrill's JP Morgan account because the account "needed a young guy who was the future of the firm";

g.  Joyce routinely publicly told Britt to "shut the fuck up" and referred to her publicly as a "cunt";

h.  Joyce informed Britt that he had been given access to her employee evaluations and her compensation arrangements with the firm; on occasion he would tap his watch while gesturing towards her, indicating that he "knew" that her time with the company was running out.

18.    Britt reported the unlawful conduct of Joyce to Merrill supervisors and employees on several occasions, including managing director Sylvia Rocco, Kevin Kelly and human resources director Nancy Van der Ziel. Merrill readily admitted that the conduct complained of was unlawful in an email to Britt from Van der Ziel dated January 11, 2008 and annexed hereto as Exhibit A:

"I know that this has all been tough and I appreciate you coming to me to help us uncover/resolve/educate people on what is and is not appropriate in the workplace. I shared a few of the examples with [Merrill Managing Director] Mike [Stewart] and my manager and both were whole-heartedly disappointed that such things still occur. Merrill doesn't tolerate such things."

19.    Despite the self-serving comment of Van der Ziel that "Merrill doesn't tolerate such things," in fact at all relevant times Merrill knew of the unlawful conduct and not only tolerated it but, on information and belief, amply rewarded the individual perpetrators, including defendant Joyce. Indeed, at a meeting just 9 days before the January 11 email, Van der Ziel admitted to Britt that although there had been numerous issues and complaints about Joyce in the

past, "things at Merrill for you will not change and you should leave." And, in the ensuing weeks following the conversations with Van der Ziel and Stewart concerning Joyce's conduct, Joyce's harassment of Britt actually increased, giving rise to the inference that Stewart and or Van der Ziel not only informed Joyce of Britt's complaints but also made no efforts to curb, if not actually encouraged, his unlawful behavior.

20.     Joyce, however, was not simply one bad apple in an otherwise exemplary workplace. Not only was his conduct towards Britt tolerated if not rewarded, but upon information and belief he is responsible for false performance reviews of her, apparently because of his close personal connections to upper management at Merrill, including Henry Mulholland and Brennan Warble, both Managing Directors.

21.     Other senior Merrill management participated in the unlawful discrimination against Britt. For example, Managing Director Michael Lynch berated, insulted and harassed Britt by telling her on more than one occasion and in the presence of others that he had been "demoted" because she had taken her legally-guaranteed maternity leave. This incident was immediately reported by Britt to Managing Director Kevin Kelly.  On another occasion, Managing Director Henry Mulholland told Britt that "she was not part of the team," and that she did not "belong" at Merrill. In the same vein, Britt was told that she would not be permitted to trade for the account of a particular client because a Merrill employee – a male - to which the client was to be assigned was a "better athlete" than she, even though the client had specifically requested Britt to cover the account. On other occasions, Britt was affirmatively lied to concerning what third parties had said about her in her performance evaluations, all part and parcel of Merrill's pattern of discrimination designed to force her resignation.

22.    Merrill's pattern of discrimination had an economic barb as well: Britt's compensation declined in each year she was there, and was significantly reduced – ultimately by over two-thirds -- following the expiration of her contract term in an effort to force her resignation.  On information and belief, the compensation of similarly-situated male traders did not suffer a similar fate.

23.    In an effort to justify their discriminatory conduct, the Merrill Defendants conspired to malign Britt by submission of false and derogatory performance reviews.

24.    In February, 2008, after attempting to obtain redress within Merrill, and being told that "things . . . will not change," Britt was forced to resign from Merrill because her working conditions had become intolerable.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(Sexual Harassment Under the New York City Human Rights Law (Admin. Code of City of N.Y. § 8-107(1) (a)))

25.    Britt repeats and re-avers each and every averment set forth in paragraphs 1 through 24 as if fully set forth herein.

26.    As a woman, Britt is a protected person as defined by the New York City Admin. Code Section 8-102 (23).

27.    Under New York City Admin. Code Section 8-107 (1) (a), it is an unlawful discriminatory practice "For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, *gender*, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person *or to discriminate against such person in compensation or in terms, conditions or privileges of employment*." (Emphasis added.)

28.    While employed at Merrill, Britt experienced sexual harassment and discrimination that was so severe and pervasive that it altered the terms, conditions and privileges of her employment.

29.    Britt was subject to unwelcome sexual harassment as a result of her gender. Britt suffered sexual harassment at the hands of several employees, most particularly defendant Joyce. Joyce baited, insulted, demeaned and otherwise acted inappropriately and unlawfully towards Britt and made numerous inappropriate sexual comments meant to intimidate and harass her, merely because she was a woman.

30.    Merrill was made aware of the harassment but did nothing, and in fact condoned said behavior by rewarding Joyce and other perpetrators while at the same time punishing Britt by maintaining the hostile environment and decreasing her compensation every year.

31.    Merrill is responsible for the conduct of its employees in harassing Britt because it was aware of, accepted, and condoned those activities and because it aided and abetted them.

32.    The harassment that Britt experienced was so severe and created working conditions so unpleasant and intolerable as to compel any reasonable person to leave.

33.    As a result of the harassment she experienced, Britt was constructively discharged from her employment at Merrill.

34.    By reason of the foregoing, the Merrill Defendants are liable to Britt for compensatory damages in an amount to be proved at trial, but no less than $10 million, and for punitive damages in an amount no less than $20 million.

### SECOND CLAIM FOR RELIEF

(Gender Discrimination under the New York City Human Rights Law (Admin. Code of City of N.Y. § 8-107))

35.    Britt repeats and re-avers each and every averment set forth in paragraphs 1 through 34 as if fully set forth herein.

36.    As a woman, Britt is a protected person as defined by the New York City Admin. Code Section 8-102 (23).

37.    Under New York City Admin. Code Section 8-107(1) (a) it is an unlawful discriminatory practice, "For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, *gender*, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person *or to discriminate against such person in compensation or in terms, conditions or privileges of employment*." (Emphasis added.)

38.    While employed at Merrill, Britt was discriminated against on account of her gender in compensation and in the terms, conditions and privileges of her employment.

39.    Britt suffered the resentment of her male colleagues because she is female and because she took a brief maternity leave in 2005. As a result of this resentment, Britt was given unwarranted, negative performance reviews, based entirely on the biased comments of her co-workers. Britt was denied responsibility for lucrative accounts because she is female. Britt also had her compensation reduced each year.

40.    Senior Merrill management participated in the unlawful discrimination against Britt through harassing and belittling comments calculated to humiliate and discomfit her. Upon information and belief, several Managing Directors harassed Britt based on her gender and participated in the falsification of her performance reviews. Furthermore, Britt's compensation declined each year she worked for Merrill, whereas the compensation of similarly-situated male traders did not suffer a similar fate. Finally, at all relevant times Merrill knew of and tolerated the unlawful conduct, and rewarded the perpetrators while ignoring Britt's complaints. All of the above harassment was part of a pattern of discrimination designed to force Britt's resignation.

41.     The discrimination against Britt experienced created working conditions so unpleasant and intolerable as to compel any reasonable person to leave.

42.     As a result of the discrimination she experienced, Britt was constructively discharged from her employment at Merrill.

43.     By reason of the foregoing, the Merrill Defendants are liable to Britt for compensatory damages in an amount to be proved at trial, but no less than $10 million, and for punitive damages in an amount no less than $20 million.

### THIRD CLAIM FOR RELIEF

(Hostile Work Environment under the New York City Human Rights Law (Admin. Code of City of N.Y. § 8-107))

44.     Britt repeats and re-avers each and every averment set forth in paragraphs 1 through 43 as if fully set forth herein.

45.     Britt was subjected to a hostile work environment at Merrill on account of her gender.  The environment at Merrill was rife with intimidation, ridicule, and insult at the hands of defendant Joyce and others.

46.     Merrill knew about, condoned, permitted, and aided and abetted, the hostile work environment to continue.  Indeed, when Britt complained, she was told that "things . . . would not change."

47.     The hostile work environment was severe and pervasive and humiliating, and accordingly, greatly altered the circumstances of Britt's employment.  Her work environment became increasingly uncomfortable, she received false performance reviews, was subject to constant insults and harassment and, finally, suffered a reduction in compensation.  All of the above was part of Merrill's pattern of discrimination designed to force plaintiff to resign.

48.     The hostile environment at Merrill created working conditions so unpleasant and intolerable as to compel any reasonable person in Britt's position to leave.

49.     As a result of the hostile work environment directed at her, Britt was constructively discharged from her employment at Merrill.

50.     By reason of the foregoing, the Merrill Defendants are liable to Britt for compensatory damages in an amount to be proved at trial, but no less than $10 million, and for punitive damages in an amount no less than $20 million.

### FOURTH CLAIM FOR RELIEF

(Retaliation under the New York City Human Rights Law (Admin. Code of City of N.Y. § 8-107 (7)))

51.     Britt repeats and re-avers each and every averment set forth in paragraphs 1 through 50 as if fully set forth herein.

52.     Retaliation is unlawful under the New York City Human Rights Law.  Admin. Code of City of N.Y. § 8-107(7).

53.     Britt engaged in a protected activity when she complained to Merrill about the harassment.  Thus, her employer was aware of her complaints.  However, despite her complaints, the harassment not only continued but worsened.  As a result, Britt continued to suffer a hostile work environment, was given falsified performance reviews, suffered a loss in compensation and was forced to resign.  There is clearly a connection between Britt's complaints concerning the harassment and the consequences she suffered.

54.     The retaliation worsened Britt's conditions of employment and made them so intolerable as to force any reasonable person to leave.

55.     Britt was constructively discharged by reason of the retaliation against her when she complained about sexual harassment, gender discrimination, and hostile work environment.

56.     By reason of the foregoing, the Merrill Defendants are liable to Britt for compensatory damages in an amount to be proved at trial, but no less than $10 million, and for punitive damages in an amount no less than $10 million.

### FIFTH CLAIM FOR RELIEF

(Sexual Harassment Under the New York State Human Rights Law (McKinney's Executive Law § 296(1) (a)))

57.    Britt repeats and re-avers each and every averment set forth in paragraphs 1 through 56 as if fully set forth herein.

58.    The New York State Human Rights Law provides in relevant part that, "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, *sex*, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or *to discriminate against such individual in compensation or in terms, conditions or privileges of employment*." (emphasis added)

59.    The Merrill Defendants' sexual harassment and discrimination altered the terms, conditions and privileges of Britt's employment in violation of the New York State Human Rights Law.

60.    While employed at Merrill, Britt experienced sexual harassment and discrimination that was so severe and pervasive that it altered the terms, conditions and privileges of her employment.

61.    Britt was subject to unwelcome sexual harassment as a result of her gender. Britt suffered sexual harassment at the hands of several employees, most particularly defendant Joyce. Joyce baited, insulted, demeaned and otherwise acted inappropriately and unlawfully towards Britt and made numerous inappropriate sexual comments meant to intimidate and harass her, merely because she was a woman.

62.    Merrill was made aware of the harassment but did nothing, and in fact condoned said behavior by rewarding Joyce and other perpetrators while at the same time punishing Britt by maintaining the hostile environment and decreasing Britt's compensation every year.

63.    Merrill is responsible for the conduct of its employees in harassing Britt because it was aware of, accepted, and condoned those activities and because it aided and abetted them.

64.    The harassment that Britt experienced was so severe and created working conditions so unpleasant and intolerable as to compel any reasonable person to leave.

65.    As a result of the harassment she experienced, Britt was constructively discharged from her employment at Merrill.

66.    By reason of the foregoing, the Merrill Defendants are liable to Britt for compensatory damages in an amount to be proved at trial, but no less than $10 million, and for punitive damages in an amount no less than $20 million.

### SIXTH CLAIM FOR RELIEF
(Gender Discrimination under the New York State Human Rights Law (McKinney's Executive Law § 296))

67.    Britt repeats and re-avers each and every averment set forth in paragraphs 1 through 66 as if fully set forth herein.

68.    The New York State Human Rights Law provides in relevant part that, "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, *sex*, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or *to discriminate against such individual in compensation or in terms, conditions or privileges of employment*." (emphasis added)

69.    While employed at Merrill, Britt was discriminated against on account of her gender in compensation and in the terms, conditions and privileges of her employment.

70.    Britt suffered the resentment of her male colleagues because she is female and because she took a brief maternity leave in 2005. As a result of this resentment, Britt was given unwarranted, negative performance reviews, based entirely on the biased comments of her co-

13

workers.  She was denied responsibility for lucrative accounts because she is female.  Britt also had her compensation reduced each year.

71.     Senior Merrill management participated in the unlawful discrimination against Britt through harassing and belittling comments calculated to humiliate and discomfit her.  Upon information and belief, several Managing Directors harassed Britt based on her gender and participated in the falsification of her performance reviews.  Furthermore, Britt's compensation declined each year she worked for Merrill, whereas the compensation of similarly-situated male traders did not suffer a similar fate.  Finally, at all relevant times Merrill knew of and tolerated the unlawful conduct, and rewarded the perpetrators while ignoring Britt's complaints.  All of the above harassment was part of a pattern of discrimination designed to force Britt's resignation.

72.     The discrimination against Britt experienced created working conditions so unpleasant and intolerable as to compel any reasonable person to leave.

73.     As a result of the discrimination she experienced, Britt was constructively discharged from her employment at Merrill.

74.     By reason of the foregoing, the Merrill Defendants are liable to Britt for compensatory damages in an amount to be proved at trial, but no less than $10 million, and for punitive damages in an amount no less than $20 million.

### SEVENTH CLAIM FOR RELIEF
(Hostile Work Environment under the New York State Human Rights Law (McKinney's Executive Law § 296))

75.     Britt repeats and re-avers each and every averment set forth in paragraphs 1 through 74 as if fully set forth herein.

76.     Britt was subjected to a hostile work environment at Merrill on account of her gender.  The environment at Merrill was rife with intimidation, ridicule, and insult at the hands of defendant Joyce and others.

77.    Merrill knew about, condoned, permitted, and aided and abetted, the hostile work environment to continue.  Indeed, when Britt complained, she was told that "things . . . would not change."

78.    The hostile work environment was severe and pervasive and humiliating, and accordingly, greatly altered the circumstances of Britt's employment.  Britt's work environment became increasingly uncomfortable, she received false performance reviews, was subject to constant insults and harassment and, finally, suffered a reduction in compensation.  All of the above was part of Merrill's pattern of discrimination designed to force Britt to resign.

79.    The hostile environment at Merrill created working conditions so unpleasant and intolerable as to compel any reasonable person in Britt's position to leave.

80.    As a result of the hostile work environment directed at her, Britt was constructively discharged from her employment at Merrill.

81.    By reason of the foregoing, the Merrill Defendants are liable to Britt for compensatory damages in an amount to be proved at trial, but no less than $10 million, and for punitive damages in an amount no less than $20 million.

### EIGHTH CLAIM FOR RELIEF

(Retaliation under the New York State Human Rights Law (McKinney's Executive Law § 296(1) (e)))

82.    Britt repeats and re-avers each and every averment set forth in paragraphs 1 through 81 as if fully set forth herein.

83.    New York State Human Rights Law Section 296(1) (e) states that it is unlawful, "For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

84.    Britt engaged in a protected activity when she complained to Merrill about the harassment. Thus, her employer was aware of her complaints. However, despite her complaints, the harassment not only continued but worsened. As a result, Britt continued to suffer a hostile work environment, was given falsified performance reviews, suffered a loss in compensation and was forced to resign. There is a clearly a connection between Britt's complaints concerning the harassment and the consequences she suffered.

85.    The retaliation worsened Britt's conditions of employment and made them so intolerable as to force any reasonable person to leave.

86.    Britt was constructively discharged by reason of the retaliation against her when she complained about sexual harassment, gender discrimination, and hostile work environment.

87.    By reason of the foregoing, the Merrill Defendants are liable to Britt for compensatory damages in an amount to be proved at trial, but no less $10 million, and for punitive damages in an amount no less than $20 million.

WHEREFORE plaintiff Jacqueline Britt prays for relief as follows:

A.    Awarding compensatory damages to her in an amount sufficient to compensate plaintiff for all injuries suffered, but no less than $10 million;

B.    Awarding punitive damages to her in an amount sufficient to punish the Merrill Defendants for their wrongful conduct and to deter similar wrongful conduct in the future, but no less than $20 million;

C.    Awarding her costs and disbursements, costs of investigations, attorneys' fees, and all other such costs available under applicable law; and

D.    Awarding her such other and further relief as this Court may deem just and

proper.

Dated: New York, New York
       June 11, 2008

HANLY CONROY BIERSTEIN SHERIDAN
 FISHER & HAYES LLP

By: _____
       Paul J. Hanly, Jr.
       phanly@hanlyconroy.com
       Andrea Bierstein
       abierstein@hanlyconroy.com
112 Madison Avenue, 7th floor
New York, New York 10016
(212) 784-6400 (Main)
(212) 784-6420 (Fax)

Attorneys for Plaintiff