```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/31/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
JACQUELINE BRITT,

                Plaintiff,

    - against -

MERRILL LYNCH & CO. INC.,
RICHARD JOYCE, and
MERRILL, LYNCH, PIERCE, FENNER
& SMITH, INC.,

                Defendants.
----------------------------------x

08 Civ. 5356 (GBD)(DFE)

(This is an ECF case.)

MEMORANDUM AND ORDER

DOUGLAS F. EATON, United States Magistrate Judge.

    Counsel for Plaintiff and counsel for Merrill Lynch submitted a discovery dispute to me in a joint letter dated December 21, 2009, and I discussed it with them in a 60-minute telephone conference on December 30.

    The following has been made clear by the representations of defense counsel and by the 11/2/09 deposition testimony of Michael Stewart. On February 28, 2008, Plaintiff resigned after working for Merrill Lynch for four years. In May 2008, she sent Merrill Lynch a draft complaint alleging that her boss Richard Joyce had insulted and demeaned her by making sexual remarks in the workplace from November 2005 to February 2008. Because of the threat of litigation, Merrill Lynch retained Law Firm X to conduct an investigation into Plaintiff's allegations. Law Firm X conducted confidential interviews with more than 20 employees of Merrill Lynch, and asked each whether he or she recalled Joyce making any sexual remarks in the workplace. Some of those employees said they recalled joking by Joyce. Law Firm X opined to Merrill Lynch that most of Plaintiff's allegations were not corroborated, but that Joyce had engaged in joking that was "excessive and sometimes inappropriate." Law Firm X recommended that Joyce's superior (Stewart) give Joyce a written notice that excessive and/or inappropriate joking in the workplace will result in significant disciplinary action. On October 23, 2008 Stewart handed Joyce a 5-sentence memo. On December 11, 2008, as part of document discovery, Merrill Lynch produced to Plaintiff a copy of this memo (stamped as ML 00223). The second sentence of the memo from Stewart to Joyce said: "While most of [Plaintiff's] allegations were not corroborated, we have learned that you have engaged in excessive and sometimes inappropriate joking in the

work place." A year later, on November 2, 2009, Plaintiff deposed Stewart and asked him about that sentence. He testified that Merrill Lynch had engaged outside counsel to interview "a couple dozen" employees. Plaintiff's counsel asked for "the names of those people who you came to believe had observed ... Mr. Joyce engaging in excessive and sometimes inappropriate joking in the workplace." He replied that he doesn't know those names. He distanced himself from the interviews, and he relied on the work of Law Firm X. He believes that the second sentence of his memo is true, but the sole basis for his belief is that the sentence was the conclusion of Law Firm X.

Defense counsel do not intend to offer the memo as evidence. On November 3, 2009, Plaintiff served Merrill Lynch with a single Interrogatory: "Identify each and every person who provided the factual basis for the statement in ML 223 that Rick Joyce 'engaged in excessive and sometimes inappropriate joking in the work place.'" On November 17, the response was: "Merrill objects to this request on the grounds that it is vague. Merrill further objects to this request because it seeks information protected by the attorney client privilege and/or work product doctrine." In the December 21 joint letter, Plaintiff requests me to compel Merrill Lynch to answer the Interrogatory, either as written or rephrased as "Identify each and every person with knowledge of Joyce's excessive and sometimes inappropriate joking in the work place."

I deny Plaintiff's request. At page 7 of the joint letter, Plaintiff asserts that "the information provided by the individuals was used for business purposes, and not for litigation." I disagree. The information provided to Law Firm X was used to prepare for the litigation threatened by Plaintiff's draft complaint. Plaintiff acknowledges that "the 'mental impressions, conclusions, opinions, or legal theories of an attorney' are subject to absolute protection." But that protected area would be invaded if I were to grant Plaintiff's request. Plaintiff is not seeking a list of all the employees who shared the workplace with her and Joyce. She knows their names. And she is not seeking the names of all employees who have knowledge that Joyce engaged in joking in the workplace. Such a list would be so broad as to be of no help to Plaintiff. As Plaintiff states at the top of page 7, she is seeking the names of each and every employee who has knowledge "that Joyce engaged in 'excessive and sometimes inappropriate joking in the workplace' and Plaintiff does not seek to learn the names of anyone else." Those quoted subjective adjectives are derived from the Merrill Lynch memo, which appears to reflect that Merrill Lynch adopted some "mental impressions, conclusions,

[and] opinions" of Law Firm X at a very generalized level. But Merrill Lynch has not waived protection of the mental impressions of those attorneys (or of its litigation attorneys) at the more particularized level which Plaintiff seeks to probe, namely, evaluating exactly which witnesses have knowledge of joking that crossed a line into an area that Law Firm X believed to be "inappropriate."

In *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677 (1981), Upjohn Co. "voluntarily submitted" to the SEC and the IRS "a preliminary report ... disclosing certain questionable payments." 449 U.S. at 387. Upjohn "provided the IRS with a list" of "the employees who communicated with [Upjohn's General Counsel] and outside counsel." 449 U.S. at 396. But it does not appear that Upjohn was required to provide a list of those employees who had knowledge of "questionable" payments. In that same paragraph at 396, the Supreme Court wrote: "As Justice Jackson noted in his concurring opinion in *Hickman v. Taylor*, 329 U.S., at 516, 67 S.Ct., at 396: 'Discovery was hardly intended to enable a learned profession to perform its functions ... on wits borrowed from the adversary.'" The *Upjohn* opinion later said: "The notes and memoranda sought by the Government here, however, are work product based on oral statements. If they reveal communications, they are, in this case, protected by the attorney-client privilege. To the extent that they do **not** reveal communications, they reveal the attorneys' mental processes in **evaluating** the communications. As Rule 26 and *Hickman* make clear, such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." 449 U.S. at 401 (emphasis added).

To the extent that Plaintiff seeks work product that does not reveal the mental impressions of an attorney, Plaintiff has not shown "substantial need" and "undue hardship." She deposed Stewart, but she is not satisfied with his answers. She has deposed five other employees, but she is not satisfied with their answers. She is free to depose other employees, including Joyce, but she has not done so.

Accordingly, I deny Plaintiff's request that I compel Merrill Lynch to answer the 11/3/09 Interrogatory, either as originally written or as rephrased.

                                              _/s/ Douglas F. Eaton_
                                        DOUGLAS F. EATON
                                        United States Magistrate Judge

Dated:    New York, New York
            December 31, 2009

Copies of this Memorandum and Order will be sent by electronic filing to all counsel, and by fax to:

Andrea Bierstein, Esq. at fax 212-784-6420fax
Izabel McDonald and Kevin Leblang, Esq. at fax 212-715-8306fax

Hon. George B. Daniels