UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACQUELINE BRITT,

Plaintiff,

- against -

MERRILL LYNCH & CO., INC., MERRILL LYNCH PIERCE, FENNER & SMITH, INC. and RICHARD JOYCE,

Defendants.

08 Civ. 5356 (GBD) (JLC)

**Oral Argument Requested**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MERRILL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

**Page**

Table of Authorities ........................................................................................................ i

Preliminary Statement........................................................................................................1

Argument ........................................................................................................................1

I. PLAINTIFF HAS NOT PRESENTED EVIDENCE OF GENDER DISCRIMINATION WITH REGARD TO HER COMPENSATION ..................................................................1

A. Plaintiff Has Not Established That She Is Similarly Situated To The Individuals She Has Identified As Comparators.......................................................1

B. Plaintiff Has Not Established That Consideration of Her Cross Evaluations To Determine Her Bonus Was Gender-Related........................................................2

C. Plaintiff Has Not Established That Merrill Failed To Consider Plaintiff's Generation Of Revenue Or That Its Treatment of Production Credits Was Gender-Related ..........................................................................................3

D. Plaintiff Has Not Demonstrated That She Was Denied Responsibility for the JP Morgan Account Due to Her Gender ..................................................9

E. Plaintiff Has Not Demonstrated That Joyce Expressed Gender Animus Toward Britt and That He Influenced Her Compensation .........................10

F. Merrill Management Determined Plaintiff's Bonus In Their Discretion and Britt Has No Evidence of Gender Discrimination In Those Decisions ............11

II. PLAINTIFF HAS NOT SHOWN THAT MERRILL OR JOYCE CREATED A HOSTILE WORK ENVIRONMENT ...................................................................12

A. Plaintiff Has Not Established That Liability May Be Imputed To Merrill For Joyce's Alleged Conduct ....................................................12

B. Plaintiff Has Not Shown That Joyce's Alleged Conduct Is Severe And Pervasive Or That It Amounted to More Than Petty Slights Or Trivial Inconveniences ........14

Conclusion ......................................................................................................................15



KL3 2817777.4

# Table of Authorities

**Page**

## CASES

*Arrouet v. Brown Bros. Harriman & Co.*,
No. 02 Civ. 9061 (TPG), 2005 WL 646111 (S.D.N.Y. Mar. 17, 2005) ........................5

*Baguer v. Spanish Broadcasting Syst.*,
No. 04 Civ. 8393 (RJS), 2010 WL 2813632 (S.D.N.Y. July 12, 2010) ....................5, 6

*Byrnie v. Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2010)..........................................................................................11

*Devlin v. Teachers' Ins. & Annuity Assoc. of Am.*,
No. 02 Civ. 3228 (JSR), 2003 WL 1738969 (S.D.N.Y. Apr. 2, 2003)........................13

*Fullard v. City of New York*,
274 F. Supp. 2d 347 (S.D.N.Y. 2003)..........................................................................10

*Gelin v. Geithner*,
No. 06-CV-10176, 2009 WL 804144 (S.D.N.Y. Mar. 26, 2009),
*aff'd*, 376 F. App'x 127 (2d Cir. 2010) ........................................................................13

*Estate of Hamilton v. City of New York*,
627 F.3d 50 (2d Cir. 2010)..........................................................................................11

*Maturine v. Am. Int'l Group, Inc.*,
No. 04 CV 9064 (GBD), 2006 WL 3206098 (S.D.N.Y. Nov. 6, 2006) ......................11

*Portee v. Deutsche Bank*,
03 Civ. 9380 (PKC), 2006 WL 559448 (S.D.N.Y. Mar. 8, 2006)...............................13

*Randall v. Tod-Nik Audiology, Inc.*,
270 A.D.2d 38 (1st Dep't 2000) ....................................................................................13

## STATUTES

Fed. R. Civ. P. 56(c) ..........................................................................................6

## Preliminary Statement

Having conceded that she was never discriminated against by her immediate manager (Michael Breheney) and the senior executives who determined her compensation (Brennan Warble and Michael Stewart), unable to refute her dismal evaluations from her manager and the more than 50 persons whom she concedes did not discriminate against her, and having acknowledged that she did not utilize Merrill's well-known complaint procedure until just weeks before voluntarily resigning (and refusing to provide complete information even then), Plaintiff desperately attempts to manufacture a question of fact by relying on irrelevant and unsupported contentions. Indeed, in a number of instances, her own testimony flatly contradicts her hollow assertions. Accordingly, her claims that her discretionary bonus awards of $775,000 in 2006 and $375,000 in 2007 were tainted by gender discrimination, she was subjected to a hostile work environment and constructively discharged, and that Merrill retaliated against her for engaging in protected activity, must be dismissed.

## Argument

### I. PLAINTIFF HAS NOT PRESENTED EVIDENCE OF GENDER DISCRIMINATION WITH REGARD TO HER COMPENSATION

#### A. Plaintiff Has Not Established That She Is Similarly Situated To The Individuals She Has Identified As Comparators

As set forth in Merrill's opening brief ("Merrill Br."), because Plaintiff's discrimination claim is based on disparate pay, she must present proof that she was paid less than similarly situated male sales traders. (Merrill Br. at 15-18.) Tellingly, Plaintiff completely fails to address the observations in Merrill's moving brief that her 2006 disparate pay claims fail because (1) in 2006 two of the three alleged comparators, David Glynn and Richard Joyce, received *lower bonuses than Plaintiff*, and (2) the third alleged comparator, Michael Breheney, cannot be considered similarly situated because he was Plaintiff's *manager* and, unlike Plaintiff (who received a discretionary bonus in 2006), Breheney received a *guaranteed* bonus as an incentive to join the Firm

that year. (Merrill Br. at 16.) Based on these facts alone, her disparate pay claims with regard to 2006 must be dismissed.

With regard to 2007, Breheney again supervised Plaintiff and thus could not reasonably be considered "similarly situated" to her. (*Id.*) And, while the other two alleged comparators – Joyce and Glynn – received higher bonuses than Plaintiff in 2007, they also are not similarly situated primarily because their work performance with respect to 2007 (and 2006), as judged by both their managers and colleagues, was unquestionably and substantially superior to that of Plaintiff. (See chart on p. 17 of Merrill Br. and McDonald Aff., Exs. E-J and L-S.)[1] Case law cited in Merrill's opening brief (at pp. 17-18) illustrates that courts use performance as a factor in determining whether comparators are similarly situated. Because Plaintiff's comparators are not similarly situated to her with respect to either 2006 or 2007, her compensation discrimination claims must be dismissed.[2]

**B. Plaintiff Has Not Established That Consideration of Her Cross Evaluations To Determine Her Bonus Was Gender-Related**

Britt argues that "Merrill's cross-evaluation system was a conduit for any improper motives harbored by the traders." (Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Br.") at 26, 29.) However, Britt herself selected all but 3 (out of 53) of her

---

[1] Unless otherwise indicated, exhibits referenced herein are attached to the McDonald Aff., submitted with Merrill's Opening Brief, and deposition excerpts referenced herein are attached to the Affidavit of Izabel P. McDonald, dated March 10, 2011, submitted herewith ("McDonald Aff. II").

[2] Even if Plaintiff could show that Joyce and Glynn were proper comparators, she cannot show that her pay was affected by her gender. In 2006, in addition to Plaintiff, two women on the New York Cash Equities Sales Trading Desk (the "Desk") received higher bonuses than Joyce and Glynn (one receiving $650,000 more than Joyce and Glynn and the other receiving $475,000 more). (Affidavit of Nancy van der Ziel, dated March 7, 2011 ("van der Ziel Aff. II.") ¶ 5.) And, in 2007, there were three women on the Desk who received higher bonuses than Joyce and Glynn (one receiving $475,000 more than Glynn and the other receiving $350,000 more). (van der Ziel Aff. II. ¶ 6.)

reviewers with respect to both the 2006 and 2007 cross evaluations (and she testified that Breheney "suggested" she include those 3). (Britt Dep. at 437, 473.)

Most importantly, Britt testified clearly that *none of the individuals who evaluated her performance on the cross evaluations for 2006 and 2007 discriminated against her*. (*Id.* at 436-39; 471-74.) Because Britt has conceded that none of the assessments by those evaluators were tainted by gender discrimination, the argument she now advances in her opposition brief – that gender animus infected her cross evaluations – is nonsensical and should be rejected.

Further undermining her argument is the fact that some of the individuals she chose to evaluate her are themselves women. In 2006, of 31 evaluators, 7 were women and in 2007, of 22 evaluators, 6 were women. (Exs. E at ML 26 and H at ML 31.) And, while Britt attempts to take issue with her poor cross evaluations, she fails completely to address her abysmal results in Merrill's sales trader rankings, where she was rated *last* out of 62 in 2006 and *last* of out 59 in 2007. (Exs. F and I.)

### C. Plaintiff Has Not Established That Merrill Failed To Consider Plaintiff's Generation Of Revenue Or That Its Treatment of Production Credits Was Gender-Related

Plaintiff hinges her argument that her pay was affected by gender discrimination on the unsupported assertion that "production credits" as reflected on GATORS – the system used by Merrill to track client production and activity (Bierstein Aff., Ex. 4, Pagano Dep. at 46) – were the principal determinant of all traders' bonuses and that the production credits linked to Plaintiff's trader identification number did not reflect the entirety of her production. (Pl. Br. at 6.) However, Britt acknowledged at her deposition that, as set out in the offer letter Merrill presented to Plaintiff, which Plaintiff signed, her bonuses for 2006 and 2007 were *purely discretionary*. (Britt Dep. at 673-74; Ex. D at P106.) Thus, her new, contradictory contention that her bonus should have been calculated based directly on her GATORS "production" must be rejected.

Moreover, Britt testified under oath that neither Michael Breheney (who completed her performance reviews for 2006 and 2007[3]), Michael Stewart nor Brennan Warble (who, with Mr. Stewart, determined her bonus compensation for 2006 and 2007[4]) discriminated against her on the basis of her gender:

> Q: And Mr. Breheney, do you consider – do you have any basis to believe that he discriminated against you on the basis of your gender?
> A: Mr. Breheney, no.
> (Britt Dep. at 349.)
>
> Q: Do you feel – do you believe that [Brennan Warble] discriminated against you on the basis of your gender?
> A: No
> (Britt Dep. at 469.)
>
> Q: Do you think that Michael Stewart discriminated against you?
> A: No

(*Id.* at 534.) She now asserts the squarely contradictory position that those individuals may have discriminated against her (albeit not in their "individual capacities"). (Plaintiff's Response to Merrill's Local Rule 56.1 Statement ¶ 20.) This is a transparent effort to create an issue of fact in order to defeat summary judgment. First, the questions posed to Plaintiff at her deposition had no bearing whatsoever on the issue of individual liability. Second, in response to the question "[w]ho at Merrill . . . do you believe . . . specifically discriminated against you other than Rick Joyce," Plaintiff identified several additional individuals – Henry Mulholland, Michael Lynch and (ironically) Stuart Sharoff, who are not named as defendants in their individual capacities.[5] (Britt Dep. at 569.) She did *not*, however, name Breheney, Stewart or Warble. (*Id.*) Third, Plaintiff cites to no evidence in the record to substantiate the conclusory contentions in her 56.1 Statement, as required under Local Rule

[3] Britt Dep. at 349, 471-74.

[4] Warble Aff. ¶ 3.

[5] The alleged discrimination by Lynch and Mulholland is addressed in Merrill's opening brief at p. 27, fn. 17 and the alleged discrimination by Sharoff is addressed at p. 28 of Merrill's opening brief.

56.1(d), except for the affidavit of Stuart Sharoff, which itself is replete with conclusory and unsupported statements. (See pp. 5-6 *infra*.) Thus, the Court must rely on her unambiguous deposition testimony – that neither Breheney, Stewart nor Warble discriminated against her. Her attempt to reverse her position on a key issue in the case should not be countenanced and her revisionist assertion in the Response to Merrill's 56.1 Statement should be disregarded. *See Baguer v. Spanish Broadcasting Syst.*, No. 04 Civ. 8393 (RJS), 2010 WL 2813632, at *9 (S.D.N.Y. July 12, 2010) ("[T]he Court need not credit a plaintiff's self-serving, contradictory statements" made in a declaration opposing summary judgment); *Arrouet v. Brown Bros. Harriman & Co.*, No. 02 Civ. 9061 (TPG), 2005 WL 646111, at *3 (S.D.N.Y. Mar. 17, 2005) (disregarding portion of Plaintiff's affidavit that contradicted his sworn testimony).

Dispelling any doubts that bonuses are linked directly to production credits, Michael Stewart (Head of Global Cash Equities at the time) testified that Merrill is "not a commission shop." (Stewart Dep. at 34-35.) In fact, he testified that "production credits" associated with a particular sales trader are "just a data point" and that Merrill management considered various factors to determine bonuses for sales traders, including but not limited to cross selling, cross evaluations, trader rankings, type of accounts and profitability of accounts. (Stewart Dep. at 27-28; 41-45.)[6]

Britt attempts to support her argument with an affidavit submitted by Stuart Sharoff, her former colleague at Merrill, who makes the unfounded and unsupported statement that Merrill allegedly relied "almost exclusively" on "production reports" for the purposes of determining bonus compensation. (Sharoff Aff. ¶ 2.) However, Sharoff was not a manager at Merrill (he was a colleague of Britt) and he had no authority to determine, and was not involved in determining Britt's

[6] Also illustrating that Merrill did not pay its sales traders based on production credits in GATORS is the fact that in each 2006 and 2007, of the five highest-paid New York traders, only one of them was a top five GATORS "producer." (van der Ziel Aff. II. ¶ 7.)

discretionary bonus in 2006 and 2007 or the compensation Merrill paid to any of its sales traders. (Affidavit of Michael Stewart dated March 4, 2011 ("Stewart Aff.") ¶ 2, 3, 4.)

Given these undisputed facts, Sharoff's speculative statements as to the manner in which bonuses were determined by Merrill management should be disregarded. Indeed, those statements do not comport with the requirement in Fed. R. Civ. P. 56(c)(4) that they be based on personal knowledge. FRCP 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be based on personal knowledge.") Moreover, Sharoff's "facts" are vague and conclusory and thus inadmissible. FRCP 56(c)(4) ([a]n affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence"). Bare allegations of fact and ultimate or conclusory facts are not sufficient. *Baguer*, 2010 WL 2813632, at *9 (statements in affidavits that are unsupported, conclusory, and based on the affiant's "belief," "fail to offer the 'concrete particulars'" required to satisfy Rule 56 and "cannot create a disputed issue of material fact."). Similarly unavailing is Sharoff's statement that "a trader's evaluation score and cross evaluations . . . had little if any impact on compensation." (Sharoff Aff. ¶ 2.) Again, because he lacked the authority to, and did not in fact, make any decisions as to Merrill sales traders' compensation, Sharoff's statements are speculative and must be disregarded.[7] In any event, Sharoff's compensation and GATORS figures for the last full year of his employment with Merrill do not support his theory. In 2006, a year in which Sharoff received a performance rating of 2 (the same

---

[7] Sharoff further opines that a sales trader's use of capital could not affect his/her compensation. (Sharoff Aff. ¶ 5.) For the same reasons set forth above, his affidavit should be disregarded on this point. Plaintiff's pod leader, Michael Breheney, clearly testified that it is the responsibility of each sales trader to manage his or her use of capital and that it is a factor by which a sales trader's performance is judged. (McDonald Aff. II., Breheney Dep. at 40.) Indeed in her 2007 performance evaluation, Britt herself acknowledged and bore responsibility for Wellington's high loss ratios: in the section entitled *Personal Effectiveness*, Britt wrote: "Going into '07 my goals are to reduce our loss ratio with wellington" (McDonald Aff., Ex. J at ML140), and in the section entitled *Overall Mid-Year Comments*, Britt wrote that her objective was "to continue the trend of lowering the loss ratio with Wellington . . ." (*Id.*)

rating Britt received that year), his total compensation was the same as Britt's ($950,000). (van der Ziel Aff. II ¶¶ 2, 3; Exs. G, K.) And, in that year, Sharoff's GATORS production credits were just under $23.25 million, while Britt's were under $5 million (van der Ziel Aff. II. ¶ 4; Ex. K), demonstrating that production credits were not directly correlated to compensation. Finally, Sharoff's opinion that a sales trader's cross evaluations barely impacted compensation is belied by the fact that his employment with the Firm was terminated because, among other things, he had engaged in inappropriate conduct in the workplace and he was not well-respected by many of his colleagues. (Stewart Aff. ¶ 6.)

Contrary to Plaintiff's argument that "Merrill failed to give Britt credit for her production on the Wellington account" (Pl. Br. at 20), evidence in the record demonstrates clearly that Britt's managers considered the business Plaintiff helped to generate from Wellington in evaluating her performance and determining her compensation.[8] First, Michael Stewart has explicitly stated that in determining Britt's bonus compensation for 2006 and 2007, he and Brennan Warble took into

---

[8] While it is true that Britt's Wellington production was not reflected in the GATORS figure associated with her trader identification number in 2006 and 2007, Glynn's and Morell's Wellington production was treated exactly the same way in those years. Wellington received its own trader identification number in early 2007 (Bierstein Aff., Ex. 4, Pagano Dep. at 95-96) and none of the Wellington team members' GATORS reflected any Wellington production thereafter. Moreover, in early 2007, O'Connor transferred Glynn and Morell's respective Wellington production credits for 2006 out of their GATORS and into the newly created Wellington trader identification number. (*See Id.*, Ex. 15.)

Moreover, the override function was used by O'Connor in early 2007 not to give Morell or Glynn any advantage but in an apparent effort to avoid any potential disadvantage she believed could result if a comparison were made between those traders' GATORS figures from 2006 (a year when trades for Wellington originally had been reflected in their GATORS) to 2007 (when Wellington was no longer reflected in their GATORS because it received its own trader identification number). (*Id.*, Ex. 15.) There would be no reason for O'Connor to use the override function with respect to Britt's production figures because her Wellington trades had not been reflected historically in the GATORS report associated with trader identification number.

In any event, Plaintiff has not and cannot adduce any evidence showing that any overrides were made in order disadvantage Plaintiff *because of her gender*. In fact, the individual who allegedly used overrides in a discriminatory fashion – Maryann O'Connor – is female.

consideration the production credits earned on the Wellington account and Britt's work on that account. (Stewart Aff. ¶ 7.)

Second, Britt's 2006 and 2007 performance reviews reflect that Britt's production and client relationships with Wellington were strong but also express serious concerns about her performance in the areas of capital usage, vacation abuse and internal relationships:

At year-end in 2006, Michael Breheney, noted:

- "Jackie was instrumental in developing an electronic relationship with Wellington. . . . Although Jackie had an increase in production, I did see a pickup in capital usage across her businesses. . . . She needs to define & implement more efficient practices of capital usage." (Ex. G at ML136.)

- "[Britt] showed excellent improvement in building Wellington's healthcare business. . . . Overall, Jackie's production and client relationships speak volumes; however, a more focused approach re: capital management, personal leadership, and communication is essential to her franchise." (Ex. G at ML137.)

And at year-end in 2007, Breheney noted:

- "Overall, Jackie's business grew stronger into the year. The highlights include . . . Wellington, although YoY#s [year over year numbers] lower, ML outperformed the downside." (Ex. J at ML140.)

- "Jackie's lowest score in her cross eval was in people leadership. This is an issue that needs immediate focus in 2008. Violation of vacation days sets the table for difficult integration with your peers. Jackie needs to exercise more discretion and concern for her teammates when making these vacation decisions. . . . Jackie's use of capital continues to be an area of concern across all customers. Her 2007 trading survey total was the lowest across the division. " (*Id.*)

Plaintiff further argues that Britt's managers "had no way to quantify [her production] as compared to the other traders who covered that account." (Pl. Br. at 21.) However, Exhibit 19, attached to Ms. Bierstein's Opposition Affidavit, shows that Wellington production credits were in fact quantified and listed (along with production credits for another account she covered – Teacher Insurance and Annuity Association) on a worksheet *with Jacqueline Britt's name on the header*. Indeed, her manager, Michael Breheney, identified the report as relating to "Jackie[] [Britt's] two

accounts." (Breheney Dep. at 51-54.) Thus, there can be no doubt that Britt's managers considered the Wellington production credits when evaluating her performance.

**D. Plaintiff Has Not Demonstrated That She Was Denied Responsibility for the JP Morgan Account Due to Her Gender**

Also unavailing is Plaintiff's claim that due to her gender, "Merrill twice refused to assign Britt to JP Morgan Bank." (Pl. Br. at 23-24.) At her deposition, Britt claimed that, when one of the sales traders on the JP Morgan account (Kevin Kelly, who had co-coverage responsibility with Stuart Sharoff for the account) left the firm in early 2006, her supervisor at that time, Dante Ferrarie – another individual who she states did *not* discriminate against her – rejected Britt's request to cover the account and instead assigned account coverage to David Diaz. (Britt Dep. at 356-60.) Thus, Ferrarie's decision in 2006 to assign the JP Morgan account to Diaz and not to Britt could not have been tainted by gender discrimination.

Plaintiff also claimed at her deposition that when Sharoff left Merrill in 2007, Steve Marchini at JP Morgan, advised her that it would make "Merrill suffer" *for Ferrarie's decision in 2006* to appoint Diaz to the account instead of Britt. Britt testified under oath that Marchini told her:

> since Merrill Lynch had already made the decision to give JP Morgan co-coverage *with Dave Diaz in 2006*, let Merrill suffer. And eventually, Jackie, don't worry. You will be on the account.

(*Id.* at 465-66 (emphasis added).) JP Morgan's decision in 2007 to punish Merrill, according to Britt herself, was based on its dissatisfaction with Ferrarie's gender-neutral decision in 2006; thus her failure to be assigned immediately to the account in 2007 could not have had anything to do with her gender.

In any event, no discrimination may be inferred because, as Plaintiff concedes, Warble (who Plaintiff has definitively stated has *not* discriminated against her) assigned Britt to the JP Morgan account only three months after Sharoff's departure from Merrill. (Warble Aff. ¶ 9; Britt

Dep. at 62, 465-69.) It is also undisputed that Joyce was not involved in the decision. (Warble Aff. ¶¶ 8, 10.)

**E. Plaintiff Has Not Demonstrated That Joyce Expressed Gender Animus Toward Britt and That He Influenced Her Compensation**

The contention that Joyce influenced Plaintiff's compensation is based entirely on speculation. Britt's argument that Joyce was influential on compensation decisions because of his corporate title – managing director (Pl. Br. at 25) – is completely unsupported by the record. Indeed, it is contradicted by her own sworn testimony, which is dispositive on this issue. Britt has testified definitively that Joyce had no role in determining her compensation:

> Q: As far as you understood and as far as you sit here today, as far as you know, Mr. Joyce had no role in determining the amount of compensation that you received, correct?
>
> A: Correct

(Britt Dep. at 674.) Indeed, Britt's testimony is consistent with the sworn statements of Michael Stewart and Richard Joyce. (Stewart Aff. ¶ 5; Joyce Decl. ¶ 5.)

Her reliance on Sharoff's affidavit, which baldly states, "[t]hose that signed off on Ms. Britt's compensation paid heed to Mr. Joyce's opinion of Ms. Britt" (Sharoff Aff. ¶ 10), does not save her claims. As set forth above, Sharoff was not a manager and had no role whatsoever in determining compensation. Thus, his contention is nothing more than conjecture and must be disregarded.

The decision in *Fullard v. City of New York*, 274 F. Supp. 2d 347 (S.D.N.Y. 2003) does not advance Plaintiff's case. *Fullard* involved a decision-maker who cited the alleged discriminator's input as playing a "substantial role" in that decision. *Fullard*, 274 F. Supp. 2d at 357. Here, there is no evidence that Joyce had any input at all in Brennan Warble's and Michael Stewart's decision to determine Britt's compensation.

### F. Merrill Management Determined Plaintiff's Bonus In Their Discretion and Britt Has No Evidence of Gender Discrimination In Those Decisions

Brennan Warble, in consultation with and approval of Michael Stewart, determined Plaintiff's 2006 and 2007 bonus amounts. (Warble Aff. ¶ 3.) Because *Plaintiff states definitively that Warble and Stewart did not discriminate against her* (Britt Dep. at 469, 534), their reasons for determining Plaintiff's 2006 and 2007 bonus amounts are, by definition, not related to her gender. In any event, Warble and Stewart properly exercised their discretion in recommending Plaintiff's bonuses in 2006 and 2007, based on the assessment of her performance. (See Merrill Br. at 20-22.) Plaintiff's disagreement with her supervisors' assessment of her performance and their decisions as to her bonus compensation in 2006 ($775,000) and 2007 ($375,000) does not demonstrate that she was underpaid due to her gender. (*Id.* at 21-22.) *See also Estate of Hamilton v. City of New York*, 627 F.3d 50, 56 n.7 (2d Cir. 2010) (dismissing city and state discrimination claims and noting that "defendants had every right to place greater emphasis on the performance evaluations."); *Byrnie v. Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) ("[The court's] role is to prevent unlawful hiring practices, not to act as a superpersonnel department that second guesses employers' business judgments.") (internal citations omitted). Even proof that an employer's decision was incorrect or unwise is immaterial as long as the decision was not based upon discriminatory factors. *Maturine v. Am. Int'l Group, Inc.*, No. 04 CV 9064 (GBD), 2006 WL 3206098, at *6 (S.D.N.Y. Nov. 6, 2006) (an employer's decision regarding an employee "may be unwise, unreasonable, or wrong, but that is not a valid basis from which to conclude that the proffered reason is pretextual."). Because Plaintiff cannot provide the court with evidence that reasonably supports a finding of unlawful discrimination with regard to her compensation, Merrill is entitled to summary judgment.

## II. PLAINTIFF HAS NOT SHOWN THAT MERRILL OR JOYCE CREATED A HOSTILE WORK ENVIRONMENT

### A. Plaintiff Has Not Established That Liability May Be Imputed To Merrill For Joyce's Alleged Conduct

Plaintiff contends that Merrill is liable for Joyce's alleged conduct because she claims Joyce "exercised managerial or supervisory responsibility." (See Pl. Br. at 30-31.) First, in disregard of the clear testimony on the record, Plaintiff suggests that an e-mail chain attached as Ex. 9 to Ms. Bierstein's affidavit illustrates that Joyce was involved in Britt's performance review. (Pl. Br. at 10, 31.) To the contrary, Breheney mentioned Joyce's schedule in the e-mail because he (Breheney) wanted to conduct Britt's review when Joyce was in the office so as to avoid having the desk understaffed. (Breheney Dep. at 86-89.) Breheney confirmed that only he, Warble and Britt participated in Britt's in-person performance review. (*Id.* at 89.)

Second, Plaintiff conceded all of the following at her deposition: (1) she did not report to Joyce, (2) the fact that he was a managing director did not mean he had supervisory responsibility over her, (3) Joyce was not the head of equity sales trading during the time Britt worked at Merrill, and (4) Joyce was not a pod leader during the time Britt as employed with Merrill.[9] (Britt Dep. at 269-272.) Indeed, during her deposition testimony Plaintiff could not articulate why she thought Joyce was her supervisor:

> Q: So what made you think that he was your supervisor?
>
> Mr. HANLY: Objection to the form.
>
> A: I don't understand. Why did I think he was my supervisor?
>
> Q: Right.
>
> A: The way because we – just the way he – I don't know why I thought he was my supervisor. I do not know why I thought he was my supervisor. I can not answer that question. I do not know why I thought he was.

---

[9] Britt's own testimony (Britt Dep. at 271-272) and Joyce's Declaration – both of which state that Joyce was not a pod leader at Merrill – contradict Sharoff's false assertion that Joyce was a pod leader. (Sharoff Aff. ¶ 6; Joyce Decl. at ¶ 4.)

(*Id.* at 272.)

Third, Plaintiff's argument that Joyce was similarly situated to her belies any claim that he was her supervisor. *See Portee v. Deutsche Bank*, 03 Civ. 9380 (PKC), 2006 WL 559448, at *10 (S.D.N.Y. Mar. 8, 2006) (rejecting plaintiff's claim that her co-worker was a decision-maker where she previously alleged that he was similarly situated).

Finally, the claim that Joyce's higher corporate title relative to Plaintiff's rendered him a supervisor defies logic. Joyce did not have "the power to hire, fire, demote, transfer, or discipline" any employees, nor did he have "virtually unchecked authority" over any employees, whereby he "directly control[ed] and supervis[ed] all aspects of [their] day-to-day activities." *Devlin v. Teachers' Ins. & Annuity Assoc. of Am.,* No. 02 Civ. 3228 (JSR), 2003 WL 1738969, at *2 (S.D.N.Y. April 1, 2003) (dismissing city and state claims of discrimination). Although Plaintiff attempts to paint Joyce with supervisory authority based purely on his corporate title, she has not presented a shred of evidence that during her employment Joyce had supervisory authority over her or any other employees. *See also Gelin v. Geithner*, No. 06-CV-10176, 2009 WL 804144, at *15 (S.D.N.Y. Mar. 26, 2009) (an individual was not a "supervisor" based merely on the plaintiff's assertion that he was a "Group Manager"), *aff'd*, 376 F. App'x 127 (2d Cir. 2010). Joyce did not run a desk nor did he have any direct reports during Britt's employment. (Joyce Decl. ¶¶ 4, 5.) He was simply a sales trader on the same desk where Plaintiff worked. (*Id.*; Stewart Aff. ¶ 2.) The case Plaintiff cites – *Randall v. Tod-Nik Audiology, Inc.*, 270 A.D.2d 38 (1st Dep't 2000) lends no support to Plaintiff's argument. In that case, the court denied defendants' invocation of the "Faragher/Ellerth defense" to harassment claims where the alleged harasser was the president, treasurer and 50% owner if the corporation, and "jointly operate[d] the business." *Id.* at 39. Here, Joyce had no supervisory or managerial responsibilities at Merrill during Plaintiff's period of employment, let alone a substantial ownership interest or operational responsibility for the Firm.

Thus, as set forth in Merrill's Opening Brief (at 23-25), because Joyce is her co-worker, Plaintiff must establish that Merrill provided no reasonable avenue for complaint or knew of the harassment but did nothing. Here Plaintiff concedes that there was an avenue for complaint. (Pl.'s Resp. to Merrill's 56.1 Stmt. at ¶¶ 3-6.) Further, she does not contest that her first complaint to Merrill about Joyce's alleged comments was made with van der Ziel in early January 2008 – just weeks before she decided to leave Merrill – and then she only reported some of Joyce's alleged conduct in the context of discussing Plaintiff's negative performance review. (*See* Merrill Br. p. 11, n.10; Britt Dep. at 480-81, 484, 523-24; van der Ziel Dep. at 31.) Britt also does not contest the fact that Merrill made reasonable efforts to investigate Plaintiff's allegations, only to have Plaintiff refuse to participate in the inquiry. (Merrill Br. at 23-25.) Indeed, after she complained to van der Ziel, Britt did not report any alleged retaliatory conduct by Joyce or by Merrill. (Britt Dep. at 314, 318, 503-04, 514.) Instead, she told van der Ziel at the end of January 2008 that she would resign. (*Id.* at 522-25.) Under these circumstances, Joyce's alleged conduct may not be imputed to Merrill.

### B. Plaintiff Has Not Shown That Joyce's Alleged Conduct Is Severe And Pervasive Or That It Amounted to More Than Petty Slights Or Trivial Inconveniences

Again, Plaintiff relies on Sharoff's affidavit, which alleges generally that Merrill was a "men's locker room" and that certain unnamed individuals had a "bias towards women." (¶ 7.) However, no reasonable jury could infer from these conclusory statements, undefined by time, place or the identification of any specific individuals, that Richard Joyce subjected Britt to a hostile work environment. Importantly, Sharoff makes no allegations that Richard Joyce discriminated against Britt or any other women, or that Joyce made *any specific statements or engaged in any specific conduct based on gender*. While Sharoff alleges that Joyce resented "some women, including Ms. Britt," he does not claim that Joyce's alleged resentment was *based upon* Britt's or the other

individuals' gender. (Sharoff Aff. ¶ 8.) [10]

## III. PLAINTIFF HAS OFFERED NO EVIDENCE IN SUPPORT OF HER CLAIMS OF RETALIATION, CONSTRUCTIVE DISCHARGE AND PUNITIVE DAMAGES

Plaintiff has failed to oppose Defendants' arguments to dismiss her claims of retaliation, constructive discharge and punitive damages. For the reasons set forth on pages 30-33 and fn. 14 on page 25 of Merrill's opening brief, those claims should be dismissed.

## Conclusion

For the foregoing reasons, Merrill respectfully requests that the Court dismiss the Complaint in its entirely and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
March 11, 2011

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Kevin B. Leblang
Kevin B. Leblang (kleblang@kramerlevin.com)
Izabel P. McDonald (imcdonald@kramerlevin.com)
Katrina L. Baker (kbaker@kramerlevin.com)
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

***Attorneys for the Merrill Defendants***
Merrill Lynch & Co., Inc. and
Merrill Lynch, Pierce, Fenner & Smith Incorporated

[10] While Britt claims that Sharoff harassed and discriminated against her based on her gender (Britt Dep. at 352-54), by, among other things, telling her that he resented her because Merrill paid her significantly when she began employment with Merrill and she took a maternity leave of absence, and that she reported Sharoff's alleged conduct to Merrill's Human Resources Department, she also alleges that she accepted employment with LaBranche Securities after she left Merrill – where Sharoff was employed – and in fact worked on a team with Sharoff while at LaBranche. (Britt Dep. at 354, 365-367.) Merrill assigned Sharoff a coach in response to Britt's complaint and took her report of Sharoff's conduct seriously (Britt Dep. at 356-66); however, the Firm terminated Sharoff's employment in May 2007 in connection with a reduction in force because, among other things, he had engaged in inappropriate conduct in the workplace (including conduct about which Britt complained) and he was not well-respected by many of his colleagues. (Stewart Aff. ¶ 6.)